Territorial Law Library



# IN THE SUPERIOR COURT OF GUAM

VINCENT E. DAVIS,

    Plaintiff &
    Counterclaim Defendant,

    vs.

LOLITA S. DAVIS,

    Defendant &
    Counterclaim Plaintiff.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. DM0143-09

**FINDINGS OF FACT AND
CONCLUSIONS OF LAW**

## INTRODUCTION

This matter came before the Honorable Alberto C. Lamorena III on January 30, 2012 and January 31, 2012 for a Bench Trial on Vincent E. Davis' Verified Complaint for Divorce and Lolita S. Davis' Amended Counterclaim for Dissolution of Marriage. Plaintiff Vincent E. Davis was present with counsel, Daniel S. Somerfleck. Defendant Lolita S. Davis was also present with counsel, Ron Moroni. Having heard testimony and reviewed the evidence, the Court now issues its findings of fact and conclusions of law.

## FINDINGS OF FACT

After weighing the credibility of the witnesses and reviewing the Exhibits, this Court finds the following by a preponderance of the evidence:

1. The parties are residents of Guam and have resided on Guam for more than 90 days.

2. Plaintiff and Defendant married in Valparaiso, Florida on October 10, 1990.

3. Plaintiff and Defendant separated on March 21, 2008.

4. The parties have two adult children, Wayne Davis and Julie Davis, and one minor child, E.M.D. (DOB 12/21/1998).

5. Plaintiff works for Hawthorne Pacific Corp., earning approximately $8,000.00 per month.

6. Since his retirement in 2007, Plaintiff has been receiving pension payouts of $3,115.00 each month.

7. Defendant works for Sheraton Laguna Guam Resort, earning approximately $1,000.00 per month.

8. Throughout the marriage and continuing beyond the date of separation, Plaintiff has been primarily responsible for the management and control of the community finances and assets.

9. Plaintiff has continued to pay off community debts after separation.

**Community Debts**

1. Mortgage at First Hawaiian Bank[1]: at date of separation, the mortgage principal balance was $175,000 and $166,834.63 at the time of trial. Equity in the property at trial was approximately $78,000.00.

---

[1] For Barrigada residence: Lot 3, Block 13, Barrigada, Guam, Estate No. 5790, Urban 96913. Guam law recognizes separate debt as "1) a debt contracted or incurred by a spouse before marriage or after entry of a decree of dissolution of marriage; 2) a debt contracted or incurred by a spouse after entry of a decree entered pursuant to § 8401 of this Title unless the decree provides otherwise; 3) a debt designated as a separate debt of a spouse by a judgment or decree of any court having jurisdiction; 4) a debt contracted by a spouse during marriage which is identified by a spouse to the creditor in writing at the time of tis creation as the separate debt of the contracting spouse; or 5) a debt which arises from a tort committed by a spouse before marriage or after entry of a decree of dissolution of marriage, a tort committed by one spouse against the other spouse or a separate tort committed during the marriage." 19 GCA § 6102(a)(1) – (5). Here, the debt was incurred during the marriage. The debt was not designated separate by any court. The debt was not identified as separate with the creditor. There is no tort which would fall under sub-section (5).

Community debt is "debt contracted or incurred by either or both spouses during marriage which is not a separate debt." 19 GCA § 6102(b). While parties conflict as to whether both parties incurred the debt or whether Plaintiff did so on his own, section 6102(b) makes it irrelevant. The legislature has defined community debt as that incurred by *either or both spouses* which is not separate debt. As discussed, the evidence does not support a finding that the mortgage was separate debt. Therefore, the mortgage is deemed to be community debt.

-2-

2. Mortgage at USAA Federal Savings Bank[2]: at date of separation, the mortgage principal balance was $101,330.00 and $96,313.94 at time of trial. Equity in the property at trial was approximately $43,687.00.

3. U.S.A.A. Bank Mastercard: $1,800.00.

4. Eglin Federal Credit Union loan[3]: $3,353.00 at the time of trial.

5. Total community debt at time of trial: $268,301.57.

## Community Property

6. Hawthorne Pacific 401K Account: $3,300.

7. Eglin Federal Credit Union Regular Share Account under Plaintiff's name: $43.86.

8. Eglin Federal Credit Union Money Market Account[4]: $15,000.00.

9. Eglin Federal Credit Union Checking Account under Plaintiff's name: $7,317.41.

10. Eglin Federal Credit Union Regular Share Account under Defendant's name: $43.86.

11. Eglin Federal Credit Union Checking Account under Defendant's name: $112.01.

12. Pentagon Federal Credit Union Account: $29,600.00.

13. Springs Valley Bank Account: $2,000.

14. T. Rowe Price I.R.A. under Plaintiff's name: $28,000.

15. T. Rowe Price I.R.A. under Defendant's name: $31,381.78

16. Scudder I.R.A. under Plaintiff's name: $19,000.

17. United States Savings Bonds[5]: $17,000 face value.

---

[2] For Jasper, Indiana residence: 510 Genevieve Ave. Jasper, IN 47546-3543.

[3] Loan for Ford Focus.

[4] Testimony and exhibits demonstrate that at the time of separation, approximately $80,000.00 was held in this account. Approximately $65,000.00 of that amount is attributable to the sale of Plaintiff's separate property acquired before the marriage. As such, the Court finds the remaining $15,000.00 is community property.

18. Army and Air Force Exchange Service Retirement Savings Account under Defendant's name: $7,562.65.

19. First Hawaiian Bank Checking Account: $2,000.

20. D.W.S. Investments: $12,000.

21. Vehicles:

    a. Ford F150: $5,000.

    b. Ford Focus: $6,000.

22. Military Pension: $2,305.10 per month.[6]

23. Total value of the community assets: $185,361.57, exclusive of monthly military pension distributions.

## Separate Property

24. House and lot[7] located at 510 Genevieve Ave. Jasper, IN 47546-3543: At the time of trial, the house and lot had an estimated value of $140,000.00.

---

[5] The Court notes that the face value of U.S. Savings Bonds may differ from their actual value due to different maturity dates and other factors.

[6] "As a community property asset, the right to military retirement benefits is a community property interest that may be characterized as community property under 19 GCA § 6101 and divided in the dissolution of a marriage under 19 GCA § 8411." Hart v. Hart, 2008 Guam 11 ¶ 26. "Under the time rule method of apportionment, 'the community property interest in retirement benefits is the percentage representing the fraction whose numerator is the employee spouse's length of service during marriage before separation… and whose denominator is the employee spouse's length of service in total.'" Id. at ¶ 42 (quoting In re Marriage of Lehman, 955 P.2d 451 (Cal. 1998)).
Evidence was received that parties were married for 17 years prior to Plaintiff's retirement. Plaintiff's retirement benefits are calculated based on his 23 years of service. Applying the time rule method, the community property interest in the retirement benefits is 74% of the total value of the pension. The evidence indicated that Plaintiff receives $3,115 each month. The community property interest in the $3,115 payout is $2,305, to which Defendant is entitled to half.

[7] The evidence indicated that when the property was acquired, title was taken as Tenants by the Entirety. With regard to property held by a husband and wife, the laws of Guam recognize property held in joint tenancy, tenants in common, and community property. See 21 GCA §§ 1214-1218. The distribution of property held by a married couple is governed by 19 GCA § 6101. The statutes are silent as to title taken as tenants by the entirety.
Tenancy by the entirety is a common law form of joint tenancy between a husband and wife. Zanelli v. McGrath, 166 Cal.App.4th 615, 628 n.9 (2008). "A tenancy by the entirety is essentially a joint tenancy, modified by the common law theory that husband and wife are one person. Only a legal fiction stands between the two. Survivorship is the predominant and distinguishing feature of each." U.S. v.

25. Vacant lot[8] located at 100 E. 520 N. Jasper, IN 47546: At the time of trial, the lot had an estimated value of $29,300.00.

26. House and lot located at Lot 3, Block 13, Barrigada, Guam, Estate No. 5790, Urban 96913: At the time of trial, the house and lot had an estimated value of $245,000.00.

27. Plaintiff's 26% separate property interest in monthly military pension payouts: $809.90.

## Separate Debts

28. No indication of separate debts.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over this dissolution proceeding pursuant to title 7, section 3105 and title 19, section 8201 of the Guam Code.

## Grounds for Divorce:

2. Parties seek dissolution on the grounds of extreme cruelty, or in the alternative, for irreconcilable differences. Dissolution of marriage may be granted for extreme cruelty. 19 GCA § 8203(b). Extreme cruelty is the wrongful infliction of grievous bodily injury, or grievous mental suffering, upon the other by one party to the marriage. 19 GCA § 8205. Dissolution of marriage may be granted for irreconcilable differences. 19 GCA § 8203(g). Irreconcilable differences are those grounds which are determined by the Court to be substantial reasons for not continuing the marriage and which

---

Jacobs, 306 U.S. 363, 370 (1939). Because title was taken in tenancy by the entirety, the right of survivorship is the dominating feature; as it is with taking in joint tenancy.

"*Separate property* means… each spouse's undivided interest in property owned in whole or in part by the spouses as co-tenants in *joint tenancy* or as co-tenants in tenancy in common." 19 GCA § 6101(a)(8) (emphasis added). With title being held by each spouse in the equivalent of joint tenancy, parties each enjoy an equal share of the property as joint tenants.

[8] This property was also taken by parties as tenants by the entirety. See n.7 *supra*.

make it appear that the marriage should be dissolved. The evidence is insufficient to support a finding of extreme cruelty, but does support a finding of irreconcilable differences. As such, the Court will grant dissolution on the basis of irreconcilable differences.

## Division of Property and Debt:

3. Title 19, section 8411(b) provides as follows:

> **§ 8411. Disposition of Property.**
>
> In case of the dissolution of marriage by the decree of a court of competent jurisdiction, the community property, and the homestead, shall be assigned as follows:
>
> (b) If the decree be rendered on any other ground than that of adultery or extreme cruelty, the community property shall be equally divided between the parties.

4. For the reasons set forth in n.1, *supra*, the mortgage at First Hawaiian Bank for the purchase of the Barrigada house and lot is deemed to be community debt.

5. For the reasons set forth in n.7, *supra*, the parties' real property located in Indiana, the house and lot located at 510 Genevieve Ave. Jasper, IN 47546-3543 and the vacant lot located at 100 E. 520 N. Jasper, IN 47546 are deemed to be held by parties in joint tenancy. Plaintiff and Defendant have an undivided one-half separate property interest in both property holdings.

6. Plaintiff contends that he is entitled to reimbursement for mortgage payments and improvements made on the Barrigada home in addition to mortgage payments on the Jasper home. "As a general rule, a spouse who, after separation of the parties, uses his or her separate funds to pay preexisting community obligations should be reimbursed upon divorce." Babauta v. Babauta, 2011 Guam 15 ¶ 32. However, "the fact that title to property is taken by spouses as joint tenants raises an inference of a gift of the funds used to acquire the property." *Id.* ¶ 25.

In <u>Babauta</u>, the Supreme Court of Guam noted that as a general rule, a spouse who uses his or her separate funds to pay preexisting community obligations should be reimbursed upon divorce. *Id.* ¶ 32. In this case, however, there is no evidence presented which would lead the Court to find that Plaintiff's separate funds were, in fact, expended for these purposes. Plaintiff was the spouse primarily responsible for the management and control of the community finances and assets in addition to his own separate funds. "It is presumed the expenses of the family are paid from community funds rather than separate funds. In the absence of contrary evidence, the community earnings are chargeable with these expenses." <u>In re Marriage of Frick</u>, 181 Cal.App.3d 997, 1019 n.11 (1986). At all times, community funds were sufficient to pay for the improvements and mortgage payments. No evidence was given which would show community funds were exhausted when the payments were made. Plaintiff did not rebut the presumption and so the community is charged with these expenses. Therefore, the Court finds that Plaintiff is not entitled to reimbursement.

7. For the reasons set forth in n.6, *supra*, Defendant is entitled to her share of the community property interest in the monthly military pension payouts. The community interest in the pension is 74%, to which Defendant is entitled to half. Defendant's share is equal to 37% of each monthly payment.

8. Evidence was presented that since his retirement in 2007 and continuing after the separation of the parties, Plaintiff has been receiving payouts from his military pension and has not given Defendant her share of the payments. The payments received before the parties' separation, and the community interest therein are deemed to have gone to the community. However, after separation, Defendant had a separate interest in the payments: half of the

community share. At the time of trial, Defendant had yet to receive any of her interest in the payments. Therefore, the Court finds that she is entitled to reimbursement of her share of the community property interest in the pension payments made since the parties' date of separation.

9. The Supreme Court of Guam has held that "the community property to be divided upon dissolution of marriage is the residue which remains after the discharge of the community obligations. Babauta v. Babauta, 2011 Guam 15 ¶ 36.

10. Title 19, section 6104(a) provides:

**§ 6104. Priorities for Satisfaction of Community Debts.**

> (a) Community debts shall be satisfied first from all community property and all property in which the spouses own an undivided equal interest as joint tenants or tenants in common, excluding the residence of the spouses. Should such property be insufficient, community debts shall then be satisfied from the residence of the spouses. Should such property be insufficient, only the separate property of the spouse who contracted or incurred the debt shall be liable for its satisfaction. If both spouses contracted or incurred the debt, the separate property of both spouses is jointly and severally liable for its satisfaction.

11. In this case, the community debts exceed the community property, excluding the vacant lot in Jasper, Indiana and the houses and lots in Jasper, Indiana and Barrigada. Plaintiff has been residing in the Jasper home and Defendant has been residing in the Barrigada home. Neither spouse has resided in the other's home since separation. The only parcel not "the residence of the spouses" is the vacant lot in Indiana. Therefore, the lot, which is held in joint tenancy for the purposes of dissolution, must be sold and all proceeds be applied to pay the community debts. If the proceeds of the sale are insufficient to

satisfy the community debt, both the Jasper residence and the Barrigada residence must be sold pursuant to 19 GCA § 6104(a).

## Family and Spousal Support

12. The Court must "provide for the medical care, support, reasonable education and maintenance of the children of the marriage . . . [and] make such suitable allowance to the other spouse for that person's support, during that person's life or for a shorter period, as the Court may deem just, having regard to the circumstances of the parties respectively." 19 GCA § 8405.

13. In this case, the Court notes that the parties were married for almost 18 years. Plaintiff earns approximately $8,000.00 per month in contrast to Defendant's monthly earnings of approximately $1,000.00. Considering the length of marriage, Defendant's and Plaintiff's monthly expenses, and each parties' ability to work contrasted with the current earning disparity between the parties, this Court finds that spousal support in the amount of $500 for the next five years paid by Plaintiff to Defendant is appropriate.

14. Additionally, unless and until it is determined otherwise by the Child Support Hearing Officer, this Court finds that Plaintiff is in the best position to provide health and dental insurance for the minor children and that Plaintiff will provide such insurance until the children reach the age of majority.

15. Child support and child support arrears are reserved for hearing and determination by the Child Support Hearing Officer.

## Child Custody

16. The Court applies the best interest of the child standard in determining custody with respect to the parties' minor children. 19 GCA § 8404(a). In this case, the best interests of the minor child are served by joint legal and

physical custody whereby the child will spend a majority of the year with Plaintiff with summers to be spent with Defendant. The minor child will spend winter vacations (Christmas) as her school schedule permits, commencing in 2013 first with Defendant and then alternating between the parties each year until the child reaches the age of majority.

# ORDER

Based on the foregoing, IT IS ORDERED THAT:

(1) Parties' request for Dissolution is GRANTED on the basis of irreconcilable differences;

(2) Defendant be restored to her maiden name at her option;

(3) The vacant lot in Jasper, Indiana is to be sold pursuant to 19 GCA § 6104(a). The parties shall exercise good faith efforts to sell the property and will do so within one year of the date of these findings and conclusions;

(4) Proceeds from the sale of the lot shall be applied to satisfy all outstanding community debts;

(5) Should the sale of the vacant lot be insufficient to satisfy the community debts, both the Jasper residence and the Barrigada residence are to be sold;

(6) Plaintiff is awarded continued possession and quiet enjoyment of the Jasper residence at 510 Genevieve Ave. Jasper, IN 47546-3543 until that property is sold;

(7) Defendant is awarded continued possession and quiet enjoyment of the Barrigada residence at Lot 3, Block 13, Barrigada, Guam, Estate No. 5790, Urban 96913 until that property is sold;

(8) Until the community debts are satisfied, Defendant shall be responsible for payment of the First Hawaiian Bank mortgage. Plaintiff is responsible for payment of the remaining community debts.

(9) Any proceeds remaining from the sale of the residence after satisfaction of community debts shall be divided equally between Defendant and Plaintiff;

(10) Should the proceeds from the sale of the home not suffice to pay all outstanding community debts, the remaining community property described herein shall be sold and applied to the debt in the following order: Ford F150; Ford Focus; household items; savings accounts; retirement accounts.

(11) Upon satisfaction of the community debts, Defendant is awarded the following: her T. Rowe Price I.R.A.; all household items; and the Ford Focus.

(12) Upon satisfaction of the community debts, Plaintiff is awarded the following: his T. Rowe Price I.R.A.; his Scudder I.R.A, the value of which will be divided in half and offset by an equivalent value to be distributed to Defendant from remaining community funds; and the Ford F150.

(13) Plaintiff is to reimburse Defendant for her 37% share of all pension payments made after the date of separation that are as yet unpaid. Additionally, 37% of all future payments from Plaintiff's military pension will be directed to Defendant for as long as Plaintiff is entitled to such payments;

(14) Plaintiff and Defendant are entitled to their remaining separate property;

(15) The parties' will each assume their separate debts;

(16) Plaintiff shall pay Defendant $500 per month as spousal maintenance for five years.

(17)    Plaintiff and Defendant shall share joint legal and joint physical custody in the following manner: the child will spend a majority of the year with Plaintiff with summers to be spent with Defendant. The minor child will spend winter vacations (Christmas) as her school schedule permits, commencing in 2013 first with Defendant and then alternating between the parties each year until the child reaches the age of majority. Plaintiff will bear the costs associated with transporting the child between the parties' physical custody;

(18)    Parties are to allow for reasonable visits and postal, telephonic or electronic communications with the minor child;

(19)    Child support and child support arrears are reserved for hearing and determination by the Child Support Hearing Officer.

(20)    Each party shall bear his and her respective costs and attorneys' fees.

(21)    Plaintiff's counsel shall prepare the interlocutory and final decrees of divorce consistent with this Order and the above findings and conclusions and submit such decrees, with Defendant's counsel's approval as to form, no later than 30 days from the date of this Order.

**SO ORDERED** this 10th of October, 2012.

_____
HONORABLE ALBERTO C. LAMORENA, III
Presiding Judge, Superior Court of Guam

I do hereby certify that the foregoing is a full true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam

OCT 11 2012

Domingo M. Nego
Deputy Clerk, Superior Court of Guam

-12-